Nicholson, C. J.,
delivered the opinion of the court.
The bill in this case was filed in the Chancery Court at Ripley by a number of the creditors of J. W. Borum & Bro., charging that they had fraudulently sold a stock of goods to- J. R. Stone for the purpose of avoiding the payment of their debts. They charge *448 that they believe that Stone knew the design and object of the Borums, and participated in their fraud. The bill was sworn to by an agent of complainants, who swears that the facts stated in the bill as of his own knowledge are true, and those stated on information and belief he believes to be true. An attachment was granted and issued to attach the stock of goods, which was done, and they were replevied by Stone.
The bill was filed against J. W. Borum and P. S. Borum, Joshua R. Stone and others. J. W: Borum died, leaving P. S. Borum the surviving partner, who failed to answer. J. R. Stone answered and denied specifically and emphatically every allegation of fraud as to himself, and all knowledge of. any fraudulent design or object on the part of the Borums. The controlling question in the case is, whether the allegation of fraud as against the Borums and Stone is made out by the evidence? It is insisted for complainants that as the .attachment bill is sworn to as well as the answer, the result is that the bill and answer only make up the issue, and that as the allegations of the bill are sustained by one witness, that is sufficient to entitle them to a decree. The rule relied on was first laid down in our State in the case of Searcy v. Pannell, in the Federal District Court, and reported in Cooke’s Reports, (Cooper’s edition) 81. That was an injunction bill, in which the complainant alleged and swore to specific facts as grounds for relief. These allegations were answered on oath and specifically denied. Judge McNairy, after stating the *449 rale which requires two witnesses, or one with strong corroborating circumstances, to overturn a sworn answei responsive to the bill, says, “but in this case the bill is also sworn to, which seems to vary the rule. It is not oath against oath, which is the reason for the adoption of the rule, but it is the oath of the complainant and one disinterested' witness against the oath of the defendant. It seems to me, therefore, that in cases of injunctions, like the present, where the complainant has to swear to his bill, the rule does not apply.” This case was followed in the case of McLard v. Linnville, 10 Hum., 164, in which Judge McKinney said, “that where the bill is sworn to, the denial in the ánswer is but opposing the defendant's oath, to the oath of the complainant, and the effect is only to make an issue between the parties, and to require the complainant to prove his case in order to entitle himself to a decree. Of course in such a case one credible witness would be sufficient to sustain the bill.”
The general rule thus recognized has been ever since followed by this court. But it does not follow that the rule applies in every case in which the bill has been sworn to, and either an attachment or injunction obtained thereon. The rule rests upon the assumption that there is oath against oath, as to the same facts, that is, if the complainant, of his own knowledge, swears that certain facts are true, and the defendant, on his own knowledge swears they are not true, or denies their truth, that makes a case of oath against oath, and the two oaths neutralize each other, the complainant under the of *450 out his own case by other evidence. But if the complainant, either by himself or by an agent, makes allegations of facts upon information, and swears to them according to his belief, and the defendant upon his own knowledge denies the facts so alleged- upon oath, that does not make a case of oath against oath according to the true meaning and spirit of the rule, but such . an answer to such a bill will stand unless overturned by two witnesses, or one with strong cor-l’oborating circumstances.
Such we regard the present case. The bill is hied by complainants who live in another State, and who profess to have no personal knowledge of the facts constituting the fraud ^alleged, .but they make their allegations upon their belief of their truth, and an agent swears to such of the facts as are stated on his own knowledge without specifying what facts he thus swears to, and swears to his belief as to those facts stated on information On the other hand the defendant responds, on his own knowledge, as to every allegation of fraud, and specifically and expressly denies each and all of them. It will not do to hold without exception that because the bill was sworn • to and an attachment obtained, therefore the answer on oath, although positive and definite in its responses and denials, merely makes an issue. The legal effect of each answer must be determined by looking to the real character of the sworn allegations of the bill, and that of the sworn responses of the answer. Perkins v. Collins, 2 Green’s Ch. R., 487. When the allegations of the bill are direct and positive, based on the *451 knowledge of the party swearing to the bill, and the' statements of the answer are also direct and positive, and responsive, based on personal knowledge, then there is oath against oath, and the rule that one witness is sufficient applies. But in a case like the present the original rule, that an answer which is responsive to the allegations of a bill not sworn to, will stand until overturned by two witnesses, or one with corroborating circumstances, will prevail. Complainants examined but two witnesses on the question of fraud. The evidence of but one of them tends to sustain the allegations of the bilk ' It appears that J. W. Borum and J. R. Stone were both dead before the proof in the cause was taken, but Stone had answered before his death. P. S. Borum the surviving partner was examined as a witness by complainants; he was a defendant but failed to answer the bill. He testifies that he was absent when his brother, J. W. Borum, made the sale to Stone of the stock of goods. Upon his return, he says, his brother and Stone informed him as to the transaction, and admitted that it was a fraudulent sale, made to hinder and delay the creditors of his brother and himself. It does not appear that he made any objection to the character of the transaction when it was disclosed to him, but if his account of it is correct, he was not unwilling to take the benefit of the fraud perpetrated by his brother and Stone. But without determining with what amount of allowance the testimony of such a witness is to be received, or whether he can be received as a credible witness, it is enough that he stands alone against the evidence furnished by *452 the answer of Stone. The evidence of the other witness furnishes no such corroboration of the testimony of P. S. Borum as to overturn the answer, but rather conflicts with it. We have therefore considered the case upon the assumption that P. S. Borum was a competent witness, being examined by complainants to testify as to .the declarations of and transactions with J. B. Stone, against whose administrator complainants are seeking judgment. To determine his Competency it is necessary to construe sec. 3813d of the Code, as follows: “In actions or proceedings by or against executors, administrators or guardians, in which judgments may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with, or statements by, the testator, intestate or ward, unless called to testify thereto by the opposite party, or required to testify thereto by the court.”
In this case P. S. Borum, the surviving partner of J. W. Borum & Bro., was a defendant. He was examined as a witness by complainants, and he testified as to statements made by Stone in his lifetime, which statements were proven with the view of enabling the conplainants to obtain a judgment against Stone’s administrator.
The policy of the Legislature under consideration is fully manifested by the enactment in sec. 3813cZ, that in all civil courts in this State no person shall be incompetent to testify because he or she is a party to, or interested in the issue tried.”
The object was to place all litigants in the civil *453 courts on equal footing as to their right to testify, •without regard to the fact that they were interested. But under this general rule it was apparent that the interests of deceased persons might be seriously affected if living litigants were allowed to make out their own cases by testifying as to transactions with, or statements by deceased litigants. To prevent such injustice, it was provided that in such actions or proceedings neither' party shall testify as to any transactions with, or statements by, the deceased party, unless called to testify by “the opposite party.” As death has closed the lips of one party, the law interposed to ■ close the lips of the other,- leaving such cases to be governed by the common law rules of evidence. It has been supposed that the Legislature used the phrase “opposite party” as applicable exclusively to the relation of the parties to the action or proceeding, as plaintiffs or defendants; that is, that in any case a plaintiff may call on defendant to testify as to transactions with, or •statements by the deceased party, or 'vice versa, and that the fact that the plaintiff is the “opposite party” entitles him in all cases to the transactions or declarations of a deceased defendant if a co-defendant can be found who can detail them. It is obvious that upon this construction of the phrase, “opposite party,” it may often happen that the very injustice will be done which the Legislature intended to prevent. The present case will illustrate the injustice that might result from this construction. According to the sworn statement of Stone in his answer, he bought the goods and paid $5,000 for them to J. ~W. and P. S. Borum. *454 He is dead, and complainants seek to make his administrator pay the value of the goods to them in discharge of the debts of J. W. and P. S. Borum. To secure a judgment, complainants sue Stone’s administrator and P. S. Borum, the surviving partner. Because P. S. Borum is a defendant, and complainants constitute the “opposite party” on the docket to-Stone’s administrator, they claim the right to use him as a witness to contradict the sworn statements of Stone, and thereby to secure for complainants a judgment for the value of the goods. If such judgment is obtained it is clear that P. S. Borum is relieved of that amount of his debts, although Stone swears that he paid J. W. and P. S. Borum $5,000 for them, and this result is brought about by his own testimony as to statements of Stone, which he cannot rebut by his own testimony as a witness, by reason of his death. The result is only avoided by the fact that Stone answered before he died, and in this way left his evidence; but if he had died without answering, under the construction contended for, his estate would have been at the mercy of the witness, whose evidence would result in paying off several thousand dollars of his indebtedness, and thus receiving payment twice for the goods. We conclude, that the intention of the Legislature in sec. 3813d was to provide that when there is antagonism of interest between two parties, whether one be plaintiff and the other defendant, or both plaintiffs, or both defendants, neither can testify against the other as to any transactions with, or statements by, the testator or intestate of an executor or *455 administrator, against whom, or for whom judgments may be rendered, unless called to testify thereto by the. party whose interest is antagonistic to that of the party called to testify. Upon this construction of the statute, the competency of the witness will depend upon the question whether his interest is antagonistic to that of the party calling him, and not merely whether he is plaintiff or defendant in the suit.
In the case before us we can see that the interest of complainants and P. S. Borum was not antagonistic, and therefore they could not legally call on him to testify for them. But we can see that the interest of the administrator of Stone was antagonistic to that of P. S. Borum, and therefore the administrator of Stone could lawfully have called him to testify.
It follows that the Chancellor erred in holding P. S. Borum to be a competent witness for complainants.
The result is that the decree of the Chancellor setting aside the sale of the goods to Stone as fraudulent and void, and rendering judgment against his administrator and the sureties in the replevin bond, is erroneous and must be reversed, but the judgments of the several complainants against P. S. Borum, surviving partner, are affirmed.
The costs of this court and the court below will be paid by complainants.